**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ASSOCIATION OF AMERICAN
RAILROADS; BNSF RAILWAY
COMPANY; and UNION PACIFIC
RAILROAD COMPANY,
             *Plaintiffs-Appellees,*          No. 07-55804

                  v.                           D.C. No.
                                              CV-06-01416-JFW
SOUTH COAST AIR QUALITY
MANAGEMENT DISTRICT; and THE                    OPINION
GOVERNING BOARD OF SOUTH COAST
AIR QUALITY MANAGEMENT
DISTRICT,
             *Defendants-Appellants.*

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted
June 4, 2009—Pasadena, California

Filed September 15, 2010

Before: Pamela Ann Rymer, Susan P. Graber, and
Raymond C. Fisher,* Circuit Judges.

Opinion by Judge Graber

---

*Judge Raymond C. Fisher was drawn to replace Judge Ann Aldrich. He has read the briefs, reviewed the record, and listened to the tape of oral argument held on June 4, 2009.

14191

**COUNSEL**

Daniel P. Selmi, Los Angeles, California; and Elena K. Saxonhouse and Gabriel M.B. Ross, Shute, Mihaly & Weinberger LLP, San Francisco, California, for the defendants-appellants.

Kevin M. Fong, Pillsbury Winthrop Shaw Pittman LLP, San Francisco, California; and Robert M. Jenkins III, Mayer Brown LLP, Washington, D.C., for the plaintiffs-appellees.

Suma Peesapati, Lozeau/Drury LLP, Alameda, California; and David Pettit, Natural Resources Defense Council, Inc., for the amici curiae.

**OPINION**

GRABER, Circuit Judge:

An array of federal, state, and local laws governs the operation of railroads, including laws that regulate the effect of the

railroad industry on the environment. Here, a local governmental agency enacted rules aimed at limiting the air pollution created by idling trains. Several entities within the railroad industry filed suit. After a bench trial, the district court held that federal law preempts the local rules. On de novo review, *Davis v. Yageo Corp.*, 481 F.3d 661, 673 (9th Cir. 2007); *J & G Sales Ltd. v. Truscott*, 473 F.3d 1043, 1047 (9th Cir. 2007), we affirm.

The State of California divides its geographic territory into 35 air quality management districts. One of the air quality districts located in Southern California is the South Coast Air Quality Management District ("the District"). The District performs two related functions that are relevant here. First, California law grants some regulatory authority to the District. Cal. Health & Safety Code § 40001. Provided that the District's rules are within the scope of its regulatory authority and that the District meets all procedural and other state-law requirements, the District's rules have the force and effect of state law.

Second, California law tasks the District with drafting and proposing an air quality management plan for its region. *Id.* § 40460. If approved by the state agency, the California Air Resources Board ("CARB"), then the plan becomes part of the statewide air quality management plan. *Id.* § 40460(d). Additionally, CARB submits the statewide air quality management plan to the federal Environmental Protection Agency ("EPA") as part of California's proposed overall "state implementation plan" under the federal Clean Air Act. *Id.*; *see generally Union Electric Co. v. EPA*, 427 U.S. 246 (1976) (discussing in detail the mechanism of using state implementation plans to meet the requirements of the federal Clean Air Act). "Once approved by EPA[,] [state implementation] plans have the force and effect of federal law." *Safe Air for Everyone v. EPA*, 488 F.3d 1088, 1091 (9th Cir. 2007) (original brackets and internal quotation marks omitted).

In late 2005 and early 2006, the District enacted the three rules that are the subject of this case. The District had identified emissions from idling trains as a source of air pollution. The District enacted rules in an attempt to reduce that pollution. One of the rules limits the permissible amount of emissions from idling trains (through a series of alternative options for achieving that goal). The other two rules impose various reporting requirements, backed by threat of penalties, on rail-yard operators.

In response, the Association of American Railroads, BNSF Railway Company, and Union Pacific Railroad Company (collectively, "the Railroads") filed this action against the District and its governing board. The Railroads contend that the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), Pub. L. No. 104-88, 109 Stat. 803, a federal act that substantially deregulated the railroad industry, preempts the District's rules. *See generally DHX, Inc. v. Surface Transp. Bd.*, 501 F.3d 1080, 1082-83 (9th Cir. 2007) (discussing ICCTA). The district court agreed and entered a permanent injunction against the District and its governing board, precluding them "from implementing or enforcing any provision of [the challenged rules]."[1] The District timely appeals.

**[1]** ICCTA contains an express preemption provision over regulation of rail transportation:

The jurisdiction of the [Surface Transportation] Board over—

(1) transportation by rail carriers, and the remedies

---

[1]The district court also held, in the alternative, that the District's rules were not within the scope of the District's state-law regulatory authority. The Railroads reiterate that view on appeal. We need not, and do not, decide that issue of state law. For purposes of this opinion, we assume without deciding that the rules fall within the District's regulatory authority.

provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

(2) the construction, acquisition, *operation*, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,

is exclusive. Except as otherwise provided in this part, *the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law*.

49 U.S.C. § 10501(b) (emphases added); *see also id.* § 10102(9) (defining "transportation," in part, as "a *locomotive*, car, vehicle, vessel, warehouse, wharf, pier, dock, *yard*, *property*, *facility*, instrumentality, or *equipment of any kind* related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use" (emphases added)).

We held in *City of Auburn v. United States Government*, 154 F.3d 1025, 1029-31 (9th Cir. 1998), that Congress intended to preempt a wide range of state and local regulation of rail activity. We find further guidance on the scope of ICCTA preemption from the decisions of the Surface Transportation Board ("STB"), to which we owe *Chevron* deference, *DHX*, 501 F.3d at 1086, and from decisions of our sister circuits.

If an apparent conflict exists between ICCTA and a *federal* law, then the courts must strive to harmonize the two laws, giving effect to both laws if possible. *See In re Bos. & Me. Corp. & Town of Ayer, Mass.*, No. 33971, 2001 WL 458685,

at *6 n.28 (S.T.B. Apr. 30, 2001) (citing *Matsushita Electric Indus. Co. v. Epstein*, 516 U.S. 367, 381 (1996); *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 133-34 (1974); *Unocal Corp. v. Kaabipour*, 177 F.3d 755, 769 (9th Cir. 1999)). If an apparent conflict exists between ICCTA and a *state or local* law, however, different rules apply.

**[2]** Generally speaking, ICCTA does not preempt state or local laws if they are laws of general applicability that do not unreasonably interfere with interstate commerce. *Bos. & Me. Corp.*, 2001 WL 458685, at *4-6; *see also In re Cities of Auburn & Kent, Wash.*, No. 33200, 1997 WL 362017, at *3-6 (S.T.B. July 1, 1997) (discussing ICCTA preemption of state and local laws). For instance, the STB has recognized that ICCTA likely would not preempt local laws that prohibit the dumping of harmful substances or wastes, because such a generally applicable regulation would not constitute an unreasonable burden on interstate commerce. *Auburn & Kent*, 1997 WL 362017, at *6; *see also Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1337 (11th Cir. 2001) ("The statutory changes brought about by the ICCTA reflect the focus of legislative attention on removing *direct* economic regulation by the *States*, as opposed to the incidental effects that inhere in the exercise of traditionally local police powers such as zoning."). As stated by our sister circuits, ICCTA "preempts all 'state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation.' What matters is the degree to which the challenged regulation burdens rail transportation . . . ."[2] *N.Y. Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 252 (3d Cir. 2007) (quoting *Fla. E. Coast Ry.*, 266 F.3d at 1331); *see also Franks Inv. Co. v.*

---

[2]For that reason, the District greatly overstates its case when it claims that a finding of preemption here would mean that *all* state and local regulation that happened to affect railroads, such as criminal laws and consumer protection laws, would be preempted.

*Union Pac. R.R. Co.*, 593 F.3d 404, 410 (5th Cir. 2010) (en banc) (agreeing with that "persuasive" interpretation of the scope of ICCTA preemption). Both we and our sister circuits have rejected the argument—advanced by the District here—that ICCTA preempts only economic regulation. *N.Y. Susquehanna*, 500 F.3d at 252; *Auburn*, 154 F.3d at 1031.

**[3]** The STB has explained that this system preserves a role for state and local agencies in the environmental regulation of railroads in at least two ways. First, to the extent that state and local agencies promulgate EPA-approved statewide plans under federal environmental laws (such as "statewide implementation plans" under the Clean Air Act), ICCTA generally does not preempt those regulations because it is possible to harmonize the ICCTA with those federally recognized regulations. *See, e.g.*, *Bos. & Me. Corp.*, 2001 WL 458685, at *5 ("[N]othing in section 10501(b) is intended to interfere with the role of state and local agencies in implementing Federal environmental statutes, such as the Clean Air Act [and the federal clean water statutes]."). Second, to the extent that state and local agencies enforce their generally applicable regulations in a way that does not unreasonably burden railroad activity, ICCTA does not preempt such regulation, despite the fact that the regulation does not have the force and effect of federal law.

**[4]** Here, the District's rules do not have the force and effect of federal law. The District alleges that it *will* submit the rules to the state agency, CARB, for its approval and that, *if* CARB approves, CARB *will* submit the rules to the federal EPA as part of California's state implementation plan. Once approved by EPA, state implementation plans have "the force and effect of federal law." *Safe Air for Everyone*, 488 F.3d at 1091 (internal quotation marks omitted). The corollary to that rule is that, *until approved by the EPA*, state implementation plans do *not* have the force and effect of federal law. For that reason, it is irrelevant that the Clean Air Act reserves certain regulatory authority to the states and localities. Because the

District's rules have not become a part of California's EPA-approved state implementation plan, they do not have the force and effect of federal law, even if they might in the future. Accordingly, there is no authority for the courts to harmonize the District's rules with ICCTA.

**[5]** Because the District's rules have the force and effect of *state* law, ICCTA preempts those rules unless they are rules of general applicability that do not unreasonably burden railroad activity. The District's rules plainly cannot meet that test. The rules apply exclusively and directly to railroad activity, requiring the railroads to reduce emissions and to provide, under threat of penalties, specific reports on its emissions and inventory. Because ICCTA "preempts all state laws that may reasonably be said to have the effect of managing or governing rail transportation," *N.Y. Susquehanna*, 500 F.3d at 252 (internal quotation marks omitted), ICCTA preempts the District's rules here.

**AFFIRMED.**