# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 13, 2017                    Decided June 9, 2017

No. 16-1121

STATE OF DELAWARE,
PETITIONER

v.

SURFACE TRANSPORTATION BOARD AND UNITED STATES OF
AMERICA,
RESPONDENTS

On Petition for Review of a Final Order
of the Surface Transportation Board

*W. Eric Pilsk* argued the cause for petitioner. With him on the briefs were *Allison I. Fultz* and *Steven L. Osit*. *Charles A. Spitulnik* entered an appearance.

*Charles H.P. Vance*, Attorney, Surface Transportation Board, argued the cause for respondents. With him on the brief were *Robert B. Nicholson* and *Sean Sandoloski*, Attorneys, U.S. Department of Justice, *Craig M. Keats*, General Counsel, Surface Transportation Board, and *Theodore L. Hunt*, Associate General Counsel.

*Kathryn D. Kirmayer* was on the brief for *amicus curiae* The Association of American Railroads in support of respondents.

Before: ROGERS and SRINIVASAN, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*:  The State of Delaware has attempted to limit nighttime noise caused by idling railroad locomotives in residential areas.  Under Delaware Senate Bill 135 ("SB 135") "[n]o person may permit the nonessential idling of a locomotive under its control or on its property between 8 p.m. and 7 a.m.," except in non-residential areas zoned for industrial use. Del. Code tit. 21, § 8503(a), (c). Acknowledging the need of locomotives to idle nonetheless, the statute exempts idling caused by: (1) traffic conditions; (2) the direction of a law-enforcement officer; (3) the operation of defrosting, heating, or cooling equipment to ensure the health or safety of the driver or passenger; (4) the operation of the primary propulsion engine for essential work-related mechanical or electrical operations other than propulsion; or (5) required maintenance, servicing, repairing, diagnostics, or inspections.  *Id.* at § 8503(b).  A violation is punishable by a civil fine between $5,000 and $20,000 for each offense.  *Id.* at § 8505.

Delaware now petitions for review of the Order of the Surface Transportation Board based on its determination that SB 135 is categorically preempted under 49 U.S.C. § 10501(b) of the Interstate Commerce Act, as broadened in the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"). It emphasizes that SB 135 is a public health and safety regulation that is narrowly tailored to avoid unduly burdening or interfering with interstate rail transportation.  The Board concluded that SB 135 "has the effect of directly managing and governing the operation of locomotives that are essential parts of rail transportation."  Bd. Dec. 4 (Feb. 29, 2016).  For the

following reasons, we must deny the petition.

**I.**

Under the ICCTA, the remedies "with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." 49 U.S.C. § 10501(b). (The parties do not suggest any exception in Chapter 105 is applicable. *See id.*) "Transportation" is defined under the ICCTA as "a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail," and "services related to that movement." *Id.* at § 10102(9)(A) & (B).

Notwithstanding the "expansive" definition of transportation, all of the circuits have concluded that it "does not encompass everything touching on railroads." *Emerson v. Kan. City S. Ry. Co.*, 503 F.3d 1126, 1129 (10th Cir. 2007); *see also Fayus Enters. v. BNSF Ry. Co.*, 602 F.3d 444, 451 (D.C. Cir. 2010); *Wedemeyer v. CSX Transp., Inc.*, 850 F.3d 889, 894–95 (7th Cir. 2017); *City of Ozark, Ark. v. Union Pac. R.R. Co.*, 843 F.3d 1167, 1171 (8th Cir. 2016); *Grosso v. Surface Transp. Bd.*, 804 F.3d 110, 118 (1st Cir. 2015). That is, the ICCTA preempts "all state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation." *N.Y. Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 252 (3d Cir. 2007) (quoting *Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1331 (11th Cir. 2001)); *see also Adrian & Blissfield R. Co. v. Vill. of Blissfield*, 550 F.3d 533, 539 (6th Cir. 2008). As summarized by the Second Circuit, states retain certain traditional police powers over public health and safety concerns, such as "[e]lectrical, plumbing and fire codes, direct

environmental regulations . . . and other generally applicable, non-discriminatory regulations and permit requirements," provided "the regulations protect public health and safety, are settled and defined, can be obeyed with reasonable certainty, entail no extended or open-ended delays, and can be approved (or rejected) without the exercise of discretion on subjective questions." *Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638, 643 (2d Cir. 2005); *see Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 105–06 (2d Cir. 2009). This power to impose "rules of general applicability," *Ass'n of Am. R.Rs. v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094, 1098 (9th Cir. 2010), includes authority to issue and enforce regulations whose effect on railroads is "incidental," *Franks Inv. Co. v. Union Pac. R.R. Co.*, 593 F.3d 404, 410–11 (5th Cir. 2010), and which "address state concerns generally, without targeting the railroad industry," *N.Y. Susquehanna*, 500 F.3d at 254; *see also Fla. E. Coast Ry. Co.*, 266 F.3d at 1331; *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 157–58 (4th Cir. 2010).

But state or local statutes or regulations are preempted categorically if they "have the effect of 'managing' or 'governing' rail transportation." *Fla. E. Coast Ry. Co.*, 266 F.3d at 1331 (alterations omitted); *see Norfolk S. Ry. Co.*, 608 F.3d at 157; *Franks Inv. Co.*, 593 F.3d at 410; *Green Mountain R.R. Corp.*, 404 F.3d at 642. Categorical preemption under the ICCTA precludes such regulation regardless of its practical effect because "the focus is the act of regulation itself, not the effect of the state regulation in a specific factual situation." *Green Mountain R.R. Corp.*, 404 F.3d at 644 (internal quotation omitted); *see also New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 332 (5th Cir. 2008); *Adrian & Blissfield R. Co.*, 550 F.3d at 540. State statutes or regulations that are not categorically preempted may still be impermissible if, as applied, they would have the effect of unreasonably burdening or interfering with rail transportation. *Franks Inv. Co.*, 593 F.3d

at 414; *Adrian & Blissfield R. Co.*, 550 F.3d at 541.

In response to Delaware's enactment of SB 135, the Norfolk Southern Railroad Company filed a petition with the Surface Transportation Board in 2015 for a declaratory order that the statute was preempted under the ICCTA. It argued that SB 135 was categorically preempted because its restrictions "specifically *prohibit* rail transportation" and that "sort of *direct* regulation, specifically targeting railroads[,] has never survived a preemption challenge." Pet. of Norfolk S. Ry. Co. for Expedited Declaratory Order 7 (Aug. 3, 2015) (emphasis in original). Alternatively, in the Railroad's view, SB 135 was preempted as applied because it "necessarily interfere[s] with rail transportation." *Id.* at 9.

The Railroad submitted the verified statement of Baron K. Emery, its superintendent for operations in Delaware. He explained that, "[i]n order to promote its transportation objective, [the Railroad] idles locomotives for a variety of reasons," Emery Statement 2 (July 30, 2015), and gave three examples. The Railroad must idle trains: (1) to maintain the air line, a process necessary to the braking system, because if the air line is not maintained for more than four hours, a multi-hour air test is required by federal law, *id.* at 2–3; (2) "due to unforeseen conditions, such as train crew shortages or scarce rail capacity," because shutting down and then re-starting trains in those circumstances "consumes a significant amount of time," while idling "avoids network congestion and delays that would result from fully shutting down and restarting the train," *id.* at 3; and (3) when the temperature falls below 35 degrees Fahrenheit "to prevent freezing or automatic dumping of the locomotive cooling system, which could result in damage to the train and thus impair rail service and network operations." *Id.* Delaware filed a Notice of Intent to Participate in the proceedings, and it replied that the State "fully acknowledges that broad regulation

of a railroad's activities by state or local authorities is preempted by federal law," and that SB 135 is permissible because it "is narrowly and precisely tailored to avoid such wholesale regulation." Reply of the State of Del. 2 (Oct. 23, 2015).

The Board granted the Railroad's petition for declaratory relief, concluding that SB 135 is categorically preempted by the ICCTA "because it has the effect of directly managing and governing the operation of locomotives that are essential parts of rail transportation." Bd. Dec. 4; *see also* 49 U.S.C. § 10501(a) & (b). The Board credited Emery's examples of how SB 135 might interfere with the Railroad's operations and rejected Delaware's defense that the statute was permissible because it was narrowly tailored. Critically, the Board observed, "Delaware has purported to determine for the railroad which rail operations are essential and which are not," thereby "substituting its judgment for that of the railroads directly managing rail operations." Bd. Dec. 4. Alternatively, the Board viewed SB 135 to be preempted as applied because it "has the effect of unreasonably burdening and interfering with rail transportation" by "leav[ing] it to the discretion of local police officers to determine whether an idling locomotive is in violation of the law." *Id.* at 5.

## II.

The State of Delaware challenges the Board's Order granting declaratory relief principally on the ground its decision fails to acknowledge that although "preemption under the ICCTA is broad, it 'does not categorically sweep up all state regulation that touches upon railroads' and does not displace states' ability to act under their traditional police powers to protect its citizens from harm." Pet'r's Br. 16 (quoting *Island Park, LLC*, 559 F.3d at 104). States may, it contends, impose limitations on railroad-related activities in order to protect the

public from harm so long as they do not unreasonably burden rail transportation. But the latter relates to as-applied preemption, *see, e.g., Adrian & Blissfield R. Co.*, 550 F.3d at 540–41, while the Board determined SB 135 is categorically preempted as well.

There is some legal uncertainty in this circuit about the appropriate level of deference a court owes to an agency's determination of its own preemption. In *Wyeth v. Levine*, 555 U.S. 555 (2009), the Supreme Court observed, with regard to the impact of tort law on federal objectives, that even in technical matters and where the history is complex and extensive, that

> we have not deferred to an agency's *conclusion* that state law is preempted[, but] attended to an agency's explanation of how state law affects the regulatory scheme. While agencies have no special authority to pronounce on pre-emption absent delegation by Congress, they do have a unique understanding of the statutes they administer and an attendant ability to make informed determinations about how state requirements may pose an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Id*. at 576–77 (internal citation omitted). The Court applied the standard of *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see United States v. Mead Corp.*, 533 U.S. 218, 234–35 (2001). *Wyeth*, 555 U.S. at 577.

Since *Wyeth*, this court concluded that it is "an open question in this circuit" whether "an agency decision against preemption of a state or local law receives *Chevron* [*U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)] deference," noting that *Wyeth* "obviously puts the *Chevron* deference claim

in further doubt." *Fayus Enters.*, 602 F.3d at 446–47. Delaware urges that the *Skidmore* standard should be applied, pointing out that other circuits have interpreted *Wyeth* to accord deference to agency preemption determinations based on that standard, deferring to the agency's reasoning only where it is persuasive. *See Grosso*, 804 F.3d at 116–17; *Steel Inst. of N.Y. v. City of N.Y.*, 716 F.3d 31, 39–40 (2d Cir. 2013); *Franks Inv. Co.*, 593 F.3d at 413–14. The Board, on the other hand, maintains *Chevron* deference is appropriate because Section 10501(b) contains an express preemption provision, and as two of our sister circuits have concluded, the Board "is uniquely qualified to determine whether state law is preempted by Section 10105(b)." Resp't's Br. 14 (quoting *N.Y & Atl. Ry. Co. v. Surface Transp. Bd.*, 635 F.3d 66, 70 (2d Cir. 2011)); *see also Emerson*, 503 F.3d at 1130.

The court need not decide the precise level of deference owed to the Board's preemption determination because it survives under either standard of review. The Board looked to the plain text of SB 135 in light of the Railroad's undisputed need to carry out its transportation objective. *See Friberg v. Kan. City S. Ry. Co.*, 267 F.3d 439, 443 (5th Cir. 2001). The ICCTA preempts state or local statutes that regulate rail transportation, which is defined broadly to include locomotives and equipment "related to the movement of passengers or property." 49 U.S.C. § 10102(9)(A); *Norfolk S. Ry. Co.*, 608 F.3d at 157. SB 135 directly regulates rail transportation by prohibiting locomotives from idling in certain places at certain times, in essence requiring that at night, in residential neighborhoods, they either shut down or keep moving (unless one of the exceptions in Chapter 85 of Delaware Code Title 21 applies). This is a regulation of rail transportation under the ICCTA, and Delaware's challenges to the Board's determination that SB 135 is categorically preempted by the ICCTA are unpersuasive.

As Delaware sees it, SB 135 "applies, literally, only to the *non-movement* of passengers and property," and "does not therefore constitute the regulation of rail transportation." Pet'r's Br. 31 (internal quotation omitted). Delaware did not make this argument to the Board, and it is forfeit. The "hard and fast rule of administrative law, rooted in simple fairness, [is] that issues not raised before an agency are waived and will not be considered by a court on review." *Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1297 (D.C. Cir. 2004). Even so, the ICCTA's definition of "transportation" belies any requirement of movement at the time of regulation; it preempts regulation of immovable objects including "warehouse[s], whar[ves], pier[s], dock[s and] yard[s]." 49 U.S.C. § 10102(9)(A). The precedents on which Delaware relies in attempting to distinguish SB 135 are unhelpful to it. *Grosso*, 804 F.3d at 117–19, vacated the Board's decision that regulating property before it was loaded on trains was categorically preempted because the Board had not focused sufficiently on whether the activity "facilitated the physical movement of passengers or property." *Id.* at 119. *Emerson*, 503 F.3d at 1129–30, involved tort claims arising from the railroad's disposal of railway ties in ditches that were not preempted because the disposal was not "transportation" under the ICCTA. In other words, regulation of activities that occur before or after "transportation" and are incidental to such transportation may not be preempted. By contrast, SB 135 limits how and when locomotives operate and thereby directly affects the movement of trains. To the extent SB 135 includes exceptions, Delaware has decided for the Railroad how it shall operate.

Similarly unavailing is Delaware's view that SB 135 is not preempted because it is "narrowly tailored" and "seeks only to limit non-essential idling that has a deleterious public health effect," and is thus analogous to cases where courts found no preemption. Pet'r's Br. 33, 36. The precedents on which it

relies are inapposite. In *Island Park LLC*, 559 F.3d at 98, 103–04, a state regulation closing a private, unpaved road across train tracks was not preempted because it would have no effect on the railroad except by "removing a potential hazard" of vehicles on the tracks at the crossing; in other words, it facilitated or enhanced railroad movement. *Id.* at 103–04. In *Franks Investment Company*, 593 F.3d at 411, a railroad crossing dispute "governed by [state] property laws and rules of civil procedure that have nothing to do with railroad crossings" was not preempted, in contrast to "a tort suit that attempts to mandate when trains can use tracks and stop on them," thereby "attempting to manage or govern rail transportation." *Id.* SB 135 directly and exclusively applies to railroad operations by deciding, as the Board observed, operational issues for the railroads and thereby, as illustrated by the Emery Statement, posing potential obstacles to rail "transportation."

Delaware fails to meaningfully distinguish precedent that supports the Board's decision that SB 135 is categorically preempted. In *Friberg*, 267 F.3d at 443–44, a state statute limiting when trains could block streets was held categorically preempted. Delaware points out that in *Friberg* the statute "directly and indiscriminately target[ed] aspects of rail transportation related to the movement of passengers or property." Pet'r's Br. 25. That SB 135 is more narrowly drawn does not mean that it does not impermissibly target rail transportation and railroad operations. In *Association of American Railroads*, 622 F.3d, state rules that "apply exclusively and directly to railroad activity" and "requir[e] railroads to reduce emissions" were "plainly" preempted because they "have the effect of managing or governing rail transportation," *id.* at 1098 (quoting *N.Y. Susquehanna*, 500 F.3d at 252). Delaware points out that the regulation in *Association of American Railroads* imposed reporting requirements that SB 135 does not, *id.* at 1096, 1098. That is not dispositive,

however. Even so, by limiting times and places for idling, and providing exceptions, SB 135 directly regulates the rail transportation of passengers or property by limiting permissible idling time, subject to exceptions whose applicability can turn on the discretion of local law enforcement. *See* Del. Code tit. 21, § 8504(a).

Still, Delaware insists that the Board's determination is owed no deference because the exceptions in SB 135 "narrowly restrict[] only *unnecessary* locomotive idling," Pet'r's Br. 36, and would allow the necessary idling identified in the Emery Statement. *See id.* at 38–39. The Emery Statement offers examples, not an exhaustive list of necessary idling, and the Board focuses principally on the fact that Delaware, not the Railroad, was making operational decisions about when, where, and how long locomotives could idle. Categorical preemption does not depend on whether the practical application of the statute or regulation is narrowly tailored. *Adrian & Blissfield R.R. Co.*, 550 F.3d at 540; *New Orleans & Gulf Coast Ry. Co.*, 533 F.3d at 332; *Green Mountain R.R. Corp.*, 404 F.3d at 644. Even under *Skidmore*'s limited deference standard, the question for the court is not whether SB 135 would prohibit any specific instances of "essential" idling, Pet'r's Br. 37; rather the question is whether an operation or service is "transportation" at all. *See, e.g.*, *N.Y. Susquehanna*, 500 F.3d at 247. The Board persuasively concluded that SB 135 regulates rail transportation.

Accordingly, we deny the petition for review.