# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3453

_____

City of Lincoln,                            *
                                            *
                  Petitioner,               *
                                            *
        v.                                  *  Petition for Review of an Order of
                                            *  the Surface Transportation Board.
Surface Transportation Board;               *
United States of America,                   *
                                            *
                  Respondents.              *

_____

Submitted: May 13, 2005
Filed: July 12, 2005

_____

Before MORRIS SHEPPARD ARNOLD, LAY, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

The City of Lincoln, Nebraska sought to acquire a portion of the right of way of a rail line owned by Lincoln Lumber Company (LLC) to use as a bicycle and pedestrian trail and to improve the city's storm drainage system. Lincoln planned to acquire the property through state eminent domain law and petitioned the Surface Transportation Board for a declaratory order that the proposed acquisition would not be federally preempted as state regulation of rail transportation under 49 U.S.C. § 10501(b). The Board determined that the proposed taking was preempted, and Lincoln seeks review of this order. We affirm.

The rail line at issue runs between 19th Street and 24th Street in Lincoln and has a 100 foot right of way. LLC acquired this segment from the Union Pacific Railroad Company in 2000 through the offer of financial assistance procedures provided in 49 U.S.C. § 10904. LLC is currently the only rail customer on the dead end line and receives approximately 50 carloads annually. The Omaha, Lincoln & Beatrice Railway Company (OLB) owns a connecting line and provides rail service to LLC pursuant to an operating agreement. LLC has leased portions of the right of way to neighboring entities which have primarily used the space for parking, but LLC is trying to terminate these long term leases. LLC uses other portions of the right of way for storage.

Lincoln wants to acquire a 20 foot strip along the northern edge of the right of way to improve its storm drainage system and complete the Husker Link Trail, a commuter trail for pedestrians and bicyclists. The storm sewer project would run along the whole five block length, but the Husker Link Trail would not since alley space between 23rd Street and 24th Street is available for the trail. The completed trail would connect the University of Nebraska main campus to its east campus and connect downtown Lincoln to the Mo Pac East Trail, which extends from Lincoln to Omaha. Lincoln planned to erect a chainlink fence along the edge of the trail to separate it from the rest of the right of way.

After LLC indicated to Lincoln that it would argue federal preemption if Lincoln instituted state condemnation proceedings, Lincoln sought a declaratory order from the Board that it would not be preempted. In its petition Lincoln asserted that LLC's rail operations would be unaffected by its proposed projects and cited other Board decisions in which railway property was converted to public use. The city also included the verified statement of Walter Schuchmann, a rail operations consultant. Schuchmann had reviewed the city's plans; examined various maps, photos, and surveys; conducted interviews; and made a site visit. His statement focused on existing obstructions of the right of way, including use of the leased

portions for parking, a utility line running between the rail and the proposed trail, and lumber storage in the area foreseen for the trail. He concluded that these existing obstructions interfered with rail operations more than the city's projects would.

LLC originally did not oppose the storm sewer project or construction of the trail between 19th Street and 22nd Street, but it changed its position about the trail after the Board commenced proceedings. In its reply brief it stated that it would not be able to get equipment to the tracks for maintenance or to handle derailments if its right of way were narrowed. LLC expressed concerns about the safety of trail users in the case of a derailment or while I joists or large pieces of lumber were being unloaded from center beam cars. These concerns were heightened by the fact that its calculations showed that at one point the trail would be only 7.5 feet from the rail. LLC also projected significant increases in rail traffic and described its plans to develop a railroad terminal area and rebuild a sidetrack. It proposed several alternative routes for the trail.

Lincoln stated in its rebuttal that the possibility of alternative routes was irrelevant to whether the trail would interfere with LLC's operations and that the alternative proposals were unworkable. It contested LLC's claims that the trail would be too close to the rails for safety, asserting that the trail would generally be more than 30 feet from the center line and that the fence running along the trail would never be closer than 10 feet from the center line. Lincoln contended that the northern 20 feet of the right of way between 22nd Street and 23rd Street, which LLC said it needed for unloading, has been used for storage and that LLC was only receiving on average one carload per year of I joists.

Included with the rebuttal was another statement from Schuchmann, the city's consultant, suggesting that the I joist shipments could be unloaded by different methods and that the current trackage could accommodate LLC's projected increase in rail traffic. He believed it unlikely LLC's line would be used by anyone else

because other users would more likely use the nearby OLB facilities to avoid paying both rail servers. LLC sought to file a surrebuttal, and Lincoln's opposition to that motion included a statement by Schuchmann in which he addressed LLC's plans in more detail, explaining that in his view there would be no rail operation or business reason to reactivate a sidetrack or construct a terminal facility. The Board denied LLC's motion for leave to file a surrebuttal.

In its order the Board framed the issue as whether the proposed taking would prevent or unduly interfere with railroad operations and interstate commerce. If so, it would be preempted by 49 U.S.C. § 10501(b), as broadened by the ICC Termination Act of 1995 (ICCTA). The Board distinguished the cases relied on by Lincoln. It said that State of Texas[1] dealt with a relocation of a right of way instead of a narrowing and that the railway in Sacramento Regional Transit District[2] had voluntarily sold the right of way to the local government entity. The Board found that Lincoln had not adequately refuted LLC's contention that it needed all of the right of way to satisfy its present and future rail needs. LLC had argued to the Board that it currently used the space to move freight, store lumber, unload railroad cars, and stage unloaded freight for further movement into shipper facilities, and it asserted that it might rebuild a sidetrack and construct a terminal facility. According to the Board all of these activities are part of transportation by rail as defined in 49 U.S.C. § 10102(9), and the proposed trail could interfere with these transportation activities. Additionally, the Board determined that Lincoln had not adequately refuted LLC's contentions that the trail would create safety hazards. In conclusion it urged the parties to renew negotiations to resolve their dispute.

_____

[1] State of Texas, Department of Transportation–Petition for Declaratory Order Regarding Highway Construction in Tarrant County, TX, Finance Docket No. 32589 (ICC served Feb. 7, 1995).

[2] Sacramento Regional Transit District–Petition for Declaratory Order Regarding Carrier Status, STB Finance Docket No. 33796 (STB served July 5, 2000).

In its petition for review of the order, Lincoln advances several arguments with respect to the Husker Link Trail. Lincoln contends that the Board's decision is not supported by substantial evidence and is arbitrary and capricious, that it misallocated the burden of proof, and that it violated precedent. Lincoln also states that it needs clarification on the Board's action regarding the storm sewer project because it does not believe the disposition is clear from the order. It argues that the decision should be vacated if the Board intended to deny relief because acquisition of the right of way for that project is not federally preempted.

Under the Administrative Procedure Act the Board decision can be overturned only if it is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law. 5 U.S.C. § 706(2). The scope of judicial review is therefore quite narrow, and we are not allowed to substitute our judgment for that of the Board. Middlewest Motor Freight Bureau v. ICC, 867 F.2d 458, 460 (8th Cir. 1989). As long as the Board's findings of fact are supported by substantial evidence in the record as a whole, we will accept its findings and the reasonable inferences it drew from them. Trans-Allied Audit Co. v. ICC, 33 F.3d 1024, 1030 (8th Cir. 1994).

The Board has broad authority over the operation of railways and associated property. The ICCTA gives the Board exclusive jurisdiction over rail transportation:

> The jurisdiction of the Board over –
>    (1) transportation by rail carriers and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>    (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,

is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b).

The statute also defines rail transportation expansively to encompass any property, facility, or equipment related to the movement of passengers and property by rail and any related services, including "receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, and interchange of passengers and property." 49 U.S.C. § 10102(9). Courts have recognized that Congress intended to give the Board extensive authority in this area. See City of Auburn v. United States, 154 F.3d 1025, 1029-31 (9th Cir. 1998) (reviewing the history of railway preemption, text of the ICCTA, and court decisions to reject the argument that preemption is limited to economic regulation). We consider Lincoln's arguments in the context of the Board's broad authority over rail transportation and our narrow review of its decisions.

Lincoln contends that the Board ignored its evidence that the project would not interfere with railway operations and focused instead on LLC's unsubstantiated claims and opposition. By doing so, Lincoln argues, the Board acted arbitrarily and capriciously and against the weight of substantial evidence. Lincoln says the Board's safety concerns are unfounded because the plans and surveys submitted by Lincoln indicate that the closest the trail comes to the rail's centerline is 23 feet in one spot, not the 7.5 feet claimed by LLC. Lincoln also complains that the Board credited LLC's statements about its future needs even though the city's expert stated that the current trackage offers ample capacity for the projected growth, that the development of a terminal is unlikely given the proximity of OLB's facilities, and that the reactivation of a sidetrack is unnecessary and prohibitively expensive.

-6-

We disagree with Lincoln's assessment of the Board's decision making. The Board is entitled to rely on its own expertise in rail operations and that of the rail user to determine that losing a 20 foot strip from the right of way along four blocks of the line would leave insufficient room for storage, loading, and unloading, as well as access to the track for maintenance and derailment response. Although the ICCTA classifies storage of materials moved by rail as part of "transportation," 49 U.S.C. § 10102(9)(B), Lincoln's consultant characterized storage of lumber as one of LLC's "nontransportation" obstructing uses of the right of way. The Board could legitimately consider that Lincoln's evidence about use of the right of way for such storage weighed against its petition instead of supporting it. LLC's representation to the Board that at one point there would only be 7.5 feet of clearance was based on its president's measurements and a conversation with the lead surveyor. While there was some conflicting evidence about the clearance distance from which the Board could have drawn varying inferences, we cannot say that its stated safety concerns are unsupported by substantial evidence in the record as a whole. See Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

Finally, the Board can consider the railway's future plans as well as its current uses and make its own evaluation of how likely it is that the plans will come to fruition. Condemnation is a permanent action, and "it can never be stated with certainty at what time any particular part of a right of way may become necessary for railroad uses." Midland Valley R.R. Co. v. Jarvis, 29 F.2d 539, 541 (8th Cir. 1928). We conclude that the Board did not act arbitrarily or capriciously or make a decision unsupported by substantial evidence on the record as a whole.

Lincoln argues that federal preemption is an affirmative defense and that the burden falls on the party asserting it, but by statute the burden of proof is on the petitioner seeking a declaratory order from an administrative agency. See 5 U.S.C. § 556(d). Lincoln's citation to Iowa, Chicago & Eastern Railroad Corp. v. Washington County, Iowa, 384 F.3d 557 (8th Cir. 2004), does not help it. Although

the burden was placed on the railroad in that case, the matter had started as a judicial proceeding rather than an administrative one. The railroad, rather than a governmental entity, had sought a declaratory judgment that a state statute was preempted by the ICCTA. We conclude that the Board did not err by placing the burden of proof on Lincoln.

Lincoln also argues that the Board's order violates its own precedents. In ruling on Lincoln's petition, the Board distinguished Sacramento Regional Transit District by pointing out that the railroad in that case had voluntarily transferred property because it thought it could operate with a reduced right of way. Lincoln objects to this distinction, arguing that consent is not the same as showing noninterference with operations and that the Board's reliance on this factor indicates that it is simply acceding to LLC's wishes. We disagree. Although the railroad's position is a factor that may be considered by the Board, there is also evidence in these proceedings of interference with railway operations. The difference between this case and Sacramento Regional Transit District is significant and justifies different results.

In State of Texas the state sought to relocate tracks and acquire a parcel of railroad property for highway improvements, and the Board's predecessor agency, the Interstate Commerce Commission (ICC), determined that it did not have jurisdiction to preempt condemnation proceedings for either project. Lincoln argues that relocation of tracks interferes more than narrowing a right of way, but the ICC found in State of Texas that replacement track would be available in a timely fashion and that rail operations would not be hindered. Lincoln speculates that the right of way must have been narrowed in some spots to complete the second State of Texas project, which involved replacing an overpass, constructing ramps, and elevating a portion of the highway. It does not appear from the ICC's order that the railroad specifically objected to any narrowing, however, and we conclude that the Board's action in this matter is not inconsistent with State of Texas.

Lincoln also asserts that state and local governments are not preempted from regulating the safe interaction of railroads and other transportation systems, giving as an example a state's ability to require that a railroad upgrade a crossing at its own expense. This argument does not address interference with rail operations, which was the issue before the Board here.

Finally, Lincoln says that it needs clarification of the Board's action about the storm sewer project because the Board's disposition was not clear from its order. Lincoln acknowledges that LLC has stated on the record that it does not oppose the project, but it seeks a remand and a ruling that the condemnation for the storm sewer will not be an acquisition or abandonment of a rail line for purposes of 49 U.S.C. §§ 10901-10903. The Board responds that there was no need to rule on that project because there was no dispute and that it is well established that nonconflicting, nonexclusive easements across railroad property are not preempted if they do not hinder rail operations or pose safety risks. To the extent that the Board's intentions were ambiguous, they have now been clarified, making a remand unnecessary.

For these reasons the petition is denied.

_____