RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0038p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

NORFOLK SOUTHERN RAILWAY COMPANY,

       *Plaintiff-Appellant,*

    *v.*

DILLE ROAD RECYCLING, LLC,

       *Defendant-Appellee.*

> No. 22-4037

─────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:20-cv-01053—J. Philip Calabrese, District Judge.

Argued: December 6, 2023

Decided and Filed: February 26, 2024

Before: BOGGS, READLER, and DAVIS, Circuit Judges.

─────────────

## COUNSEL

─────────────

**ARGUED:** Tobias S. Loss-Eaton, SIDLEY AUSTIN LLP, Washington, D.C., for Appellant. David M. Cuppage, MCCARTHY, LEBIT, CRYSTAL & LIFFMAN CO., LPA, Cleveland, Ohio, for Appellee. **ON BRIEF:** Tobias S. Loss-Eaton, SIDLEY AUSTIN LLP, Washington, D.C., for Appellant. David M. Cuppage, MCCARTHY, LEBIT, CRYSTAL & LIFFMAN CO., LPA, Cleveland, Ohio, for Appellee. Timothy J. Strafford, STEPTOE & JOHNSON LLP, Washington, D.C., for Amicus Curiae.

─────────────

## OPINION

─────────────

BOGGS, Circuit Judge. This case concerns a narrow parcel of land (the "Parcel")—roughly 600 feet by 32 feet—that runs adjacent to Norfolk Southern Railway Company's active rail line in Euclid, Ohio. No one disputes that Norfolk owns the Parcel. But Dille Road

Recycling, which owns the property on the other side of the Parcel, has occupied and used the Parcel for nearly two decades. A few years ago, the parties began an out-of-court dispute over the Parcel's use. After negotiations stalled, the parties took the matter to federal court. Dille sought adverse possession of the Parcel or, alternatively, a prescriptive easement. Norfolk sought a declaration that Dille's property claims were preempted by the Interstate Commerce Commission Termination Act (ICCTA). The district court held that Dille's prescriptive-easement claim was not preempted, and then granted Dille its easement. We disagree with the district court's threshold conclusion. Because federal law does preempt Dille's state-law prescriptive-easement claim, we reverse.

## I. BACKGROUND

### A. The Parcel

The Parcel is a .43-acre strip that runs parallel to Norfolk's active railway, which runs, roughly, from Cleveland, Ohio, to Erie, Pennsylvania. It is a thin rectangle measuring 614 feet long on its longest side and 32 feet wide.

Dille owns the property adjacent to the Parcel on the opposite side, where it conducts a scrap-metal recycling business (the "Property"). Dille has owned the Property since 2016. Before that, beginning in 2007, Dille leased the Property from G.R.K. Inc. G.R.K obtained the Property in 1991. It is undisputed that, since the early 90s, Dille and its predecessors have used the land (including the Parcel) exclusively.

A fence and gate have separated the Parcel from the rest of Norfolk's rail corridor since at least 1994. In 2007, Dille spent around $10,000 to rebuild the fence. The fence is a solid, privacy-style wooden barrier. In 2018, Dille installed more fencing—1,100 feet of 8-foot-tall chain link fencing and additional gates. Dille says that the Parcel must be completely fenced off because it is "a requirement of the City of Euclid to operate a recycling facility [and] there are . . . safety and security reasons to enclose [the Parcel] with a fence."

Dille uses the Parcel primarily as a weighing station and scrap dump. Shortly after leasing its property from G.R.K, Dille installed a $50,000 truck scale on the Parcel. To access

the scale, trucks enter and exit via the southwest end of the Parcel. Dille says that this scale is essentially immovable, as "[t]here is no other practical or functional location on [the Property] to install [it]." The scale is buried in the ground at surface level. Moreover, Dille says there is nowhere else on the Property with a "long enough approach . . . for trucks to . . . maneuver on and off the scale."

Not surprisingly, Dille says that it requires the entire Parcel to operate its recycling business. Roughly two-thirds of the Parcel (the part with the scale and approach) are unsuitable for shared use. That portion of the Parcel "would have to be kept wide open unobstructed, no structures . . . to be of shared use with Norfolk . . . ." Despite this, Dille has averred that it is "willing and able to share" the Parcel with Norfolk. Dille suggests that the parties can achieve shared use of the Parcel because

> [Dille] would provide the railroad with access to [the Parcel] including a key to open the gate which currently secures [the Parcel]. [Dille] would also provide the railroad with the name and phone number of an employee to contact in the event of any emergency or urgent situation. In the event the railroad needs space to store equipment or machinery . . . [Dille] could store equipment and machinery at the north end of the Property away from the truck scale and location used by trucks to maneuver on and off the scale.

Norfolk asserts that the latter concession regarding equipment storage is essentially meaningless because the section of the Parcel that Dille offers up is "very marshy and wet" and, according to Dille, unsuitable for vehicles (much less any permanent structures). That section of the property is where Dille dumps materials, and it is essentially covered in scrap.

## B. The Dispute

Norfolk first contacted Dille about ownership of the Parcel in 2015. A Dille representative responded and said they would look into the property lines. After further communications, a Norfolk representative visited the Parcel in January 2016. In August 2016, Dille purchased the Property from G.R.K.

In October 2016, Norfolk asked Dille to remove some debris that had fallen over a deteriorated portion of the fence line between the Parcel and Norfolk's rail line. Dille agreed to

remove the debris, re-establish the fence line, and "make sure [it] doesn't happen again in the future."

In 2019, Norfolk again contacted Dille about some encroachment onto its rail line. Dille conducted a boundary survey, which confirmed that the Parcel belongs to Norfolk. The parties attempted to negotiate a solution—Norfolk offered to lease the Parcel to Dille and Dille offered to buy the Parcel outright. After a few months of stalled negotiations, Dille told Norfolk that it would sue for adverse possession and prescriptive easement and provided Norfolk a copy of a draft complaint.

In May 2020, Norfolk sought a declaratory judgment in federal district court that federal law preempts Dille's claims of adverse possession and prescriptive easement as to the Parcel. Dille counterclaimed and sought a judgment that it has a non-exclusive easement over the Parcel. Dille also claimed that laches bars Norfolk from restricting Dille's use of the Parcel. Norfolk moved for judgment on the pleadings.

Relying on Surface Transportation Board (STB) decisions, the district court held that the ICCTA preempts Dille's adverse-possession claim. The court adopted the reasoning of the STB that adverse-possession claims would "allow[] landowners to carve strips of land off railroad rights of way, undermining interstate commerce." The court noted that even though the STB and the Sixth Circuit have not treated adverse-possession claims as categorically preempted, the authorities "conclude[], almost categorically, that adverse possession burdens railroad property." Accordingly, the court granted Norfolk's motion as to Dille's adverse-possession claim.

The district court then decided that, because the appropriate preemption analysis for prescriptive-easement claims is an as-applied analysis, it could not adjudicate Dille's prescriptive-easement claim at the pleadings stage. "[U]nlike adverse possession," the court wrote, "a prescriptive easement does not take railroad property [but] allows co-existing rail and non-rail uses." The court acknowledged that the parties agree that Dille's use of the parcel has been exclusive, but "they are silent on whether Dille Road Recycling's use of the property necessarily excludes Norfolk Southern and on whether Dille Road Recycling's use burdens Norfolk Southern, rail use of the property, or interstate commerce more generally." The court

reasoned that, because the relevant authorities often find that non-exclusive easements are not preempted, it was improper to decide this issue at the pleadings stage. It noted that "[i]f the facts turn out to show that [Dille] seeks to exclude Norfolk Southern from the property altogether, judgment in favor of the railroad may be appropriate."

On cross-motions for summary judgment, the district court held that Dille's use of the Parcel does not entirely exclude Norfolk and reasoned that "inconvenience does not, as a matter of law, elevate non-exclusive or shared use of property to an unreasonable interference with railroad operations such that the Termination Act preempts State remedies." Once the court held that the easement was non-exclusive, it applied the STB's decision in *Jie Ao and Xin Zhou— Petition for Declaratory Order*, No. FD 35539, 2012 WL 2047726, at *6 (STB June 4, 2012), that non-exclusive easements "are not preempted, as long as they do not impede rail operations or pose undue safety risks."

Once the district court dispensed with Norfolk's preemption argument, it turned to Dille's request for a prescriptive easement. Noting that Norfolk did not dispute that Dille's use of the Parcel likely fits the criteria for an easement under Ohio law, the court held that the elements were indeed met (open, notorious, adverse, continuous, and possessed for at least 21 years). Because the court ruled that Dille had a valid easement, it did not reach Dille's arguments of easement by estoppel and laches.

Norfolk now challenges the district court's summary-judgment order and argues that Dille's prescriptive-easement claim is preempted under federal law. The STB and the federal courts have concurrent jurisdiction to decide issues of federal preemption. *Adrian & Blissfield R. Co. v. Vill. of Blissfield*, 550 F.3d 533, 539 n.4 (6th Cir. 2008). We review de novo the district court's grant of summary judgment as well as issues of preemption. *State Farm Bank v. Reardon*, 539 F.3d 336, 340 (6th Cir. 2008).

## II. DISCUSSION

### A

Congress replaced the Interstate Commerce Commission with the STB when it enacted the ICCTA in 1995.  Congress included an express-preemption clause in the ICCTA that gave the STB exclusive jurisdiction over most activities directly related to rail transportation:

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State, is exclusive.  Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b).  The term "transportation" is broad.  It includes a "warehouse, . . . property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use."  *Id.* § 10102(9)(A).  Further, it includes "services related to that movement . . . and interchange of passengers and property."  *Id.* § 10102(9)(B).  A "railroad" means "a switch, spur, track, terminal, terminal facility, and a freight depot, yard, and ground, used or necessary for transportation."  *Id.* § 10102(6)(C).

The ICCTA's preemption scheme is vast, but it is not complete.  The ICCTA "preempts all state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation."  *Adrian & Blissfield*, 550 F.3d at 539 (quoting *N.Y. Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 252 (3d Cir. 2007)) (cleaned up).  Although there is a presumption under the Supremacy Clause that Congress does not intend to preempt state law, "an assumption of nonpre-emption is not triggered when the State regulates in an area where there has been a history of significant federal presence."  *R.R. Ventures, Inc. v. Surface Transp. Bd.*, 299 F.3d 523, 562 (6th Cir. 2002) (quoting *United States v. Locke*, 529 U.S. 89, 108 (2000)).  Accordingly, courts in this circuit and beyond have recognized that Congress

intended to implement a sweeping preemption scheme in the ICCTA. *See, e.g.*, *CSX Transp., Inc. v. City of Sebree*, 924 F.3d 276, 283 (6th Cir. 2019) ("It is difficult to imagine a broader statement of Congress'[s] intent to preempt state regulatory authority over railroad operations." (cleaned up)).

In general, we "must give considerable weight and due deference to the [STB's] interpretation of the statutes it administers unless its statutory construction is plainly unreasonable." *RLTD Ry. Corp. v. Surface Transp. Bd.*, 166 F.3d 808, 812 (6th Cir. 1999) (quoting *Brotherhood of Locomotive Eng'rs v. ICC*, 909 F.2d 909, 912 (6th Cir. 1990)). Though "agencies have no special authority to pronounce on pre-emption absent delegation by Congress," an agency's thorough, consistent, and persuasive interpretations are accorded significant weight. *Wyeth v. Levine*, 555 U.S. 555, 577 (2009). To that end, we have adopted the STB's approach to determine the extent to which the ICCTA preempts any particular state action. *Adrian & Blissfield*, 550 F.3d at 539 ("[T]he STB was authorized by Congress to administer the [ICCTA] and is therefore uniquely qualified to determine whether state law should be preempted by the [ICCTA]." (cleaned up)).

Our preemption analysis distinguishes between two types of preempted state actions. First, some actions are categorically (facially) preempted because they "directly conflict with exclusive federal regulation of railroads." *CSX Transp., Inc.—Pet. for Declaratory Ord.*, No. FD 34662, 2005 WL 1024490, at *3 (STB May 3, 2005). These state actions are a per se unreasonable interference with interstate commerce, so "the preemption analysis is addressed not to the reasonableness of the particular state or local action, but rather to the act of regulation itself." *Adrian & Blissfield*, 550 F.3d at 540 (quoting *CSX Transp.*, 2005 WL 1024490, at *3). There are two broad categories that are categorically preempted regardless of the facts or circumstances:

> [(1)] any form of state or local permitting or preclearance that, by its nature, could be used to deny a railroad the ability to conduct some part of its operations or to proceed with activities that the Board has authorized. [And]
>
> [(2)] state or local regulation of matters directly regulated by the Board—such as the construction, operation, and abandonment of rail lines; railroad mergers, line acquisitions, and other forms of consolidation; and railroad rates and service.

*CSX Transp.*, 2005 WL 1024490, at *2. Second, actions that are not categorically preempted can be preempted as applied. This as-applied preemption analysis "requires a factual assessment of whether that action would have the effect of preventing or unreasonably interfering with railroad transportation." *Adrian & Blissfield*, 550 F.3d at 540 (quoting *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 332 (5th Cir. 2008)).

Though we have not previously examined ICCTA preemption in the context of easements,[1] the STB and our sister circuits have. In short, whether an easement is preempted is a factual determination based on the specific nature of the easement sought and how it would affect railroad operations broadly. On one end of the spectrum are routine, nonexclusive easements such as at-grade crossings and aerial easements. These are generally not preempted. *See Jie Ao & Xin Zhou*, 2012 WL 2047726, at *6 (citing *E. Ala. Ry.—Pet. for Declaratory Order*, No. FD 35583 (STB Mar. 9, 2012)). On the other end, easements that are exclusive or deemed adverse possession by another name are often preempted. *See 14500 Ltd. LLC—Pet. For Declaratory Ord.*, No. FD 35788, 2014 WL 2608812, at *4–5 (STB June 4, 2014).

**B**

Our first task is to decide under which framework we must analyze ICCTA preemption in the context of Dille's prescriptive-easement claim.[2] Norfolk argues that Dille's prescriptive easement is preempted whether this court analyzes it under a categorical or as-applied framework, but it spends a considerable amount of time arguing that categorical preemption applies. Dille says that the proper analysis is the as-applied framework.[3] We hold that the

---

[1]This court has discussed ICCTA preemption in other contexts not particularly relevant here. *See Tyrrell v. Norfolk S. Ry. Co.*, 248 F.3d 517, 523 (6th Cir. 2001) (discussing ICCTA's interplay with the Federal Railroad Safety Act, but only analyzing FRSA preemption); *Cuyahoga Falls & Hudson Ry. Co. v. Vill. of Silver Lake*, 122 F. App'x 845, 847 (6th Cir. 2005) (analyzing ICCTA preemption, but in the context of whether Appellants were even a "rail carrier" or their claims even involved *interstate* rail networks); *R.R. Ventures, Inc. v. Surface Transp. Bd.*, 299 F.3d 523, 551 (6th Cir. 2002) (discussing ICCTA preemption in the context of rail-line sales, contracts, and relevant Ohio state statues); *City of Sebree*, 924 F.3d at 281 (analyzing preemption of a state ordinance governing rail-crossing maintenance).

[2]Dille does not argue for adverse possession on appeal.

[3]Dille also argues that Norfolk waived its argument for categorial preemption because it failed to bring it up in its summary-judgment briefing. Of course, this court reviews issues of federal preemption de novo and can entertain Norfolk's argument about categorial preemption on appeal. Also, Dille is actually arguing that Norfolk *forfeited* its argument.

proper evaluation of ICCTA preemption for prescriptive-easement claims is the as-applied framework.

An easement is a sort of "possessory action [that] invokes only state property laws." *See Franks Inv. Co. LLC v. Union Pac. R.R. Co.*, 593 F.3d 404, 413 (5th Cir. 2010). It is not a form of state or local permitting or preclearance that would deny STB-authorized rail operations, nor is it state regulation of matters directly regulated by the STB. *See CSX Transp.*, 2005 WL 1024490, at *2. If it were, it would be a per se interference with interstate commerce. In that case, it would be categorically preempted because that standard focuses on the act of regulating itself, as opposed to the reasonableness of any individual state action. But an easement is not the type of state action that, by the very act of regulation, interferes with the STB's exclusive jurisdiction. It is, however, the type of state action that can, *in some circumstances*, unreasonably interfere with railroad transportation. Accordingly, challenges to easements must be analyzed as applied.

The STB's decisions concerning easements support this distinction. In *Jie Ao & Xin Zhou*, the STB distinguished between adverse-possession claims (taking railroad property outright) and prescriptive-easement claims (allowing for the possibility of shared use), but still analyzed both claims under the as-applied framework. With respect to the adverse-possession claim, the STB found that federal preemption applied, based on the facts, because it had the "effect of preventing or unreasonably interfering with railroad transportation." *Jie Ao & Xin Zhou*, 2012 WL 2047726, at *6. That language tracks the language of the as-applied preemption standard. *See Adrian & Blissfield*, 550 F.3d at 540. The STB then left no doubt as to the proper analysis for easement claims:

> Unlike an adverse possession claim, a prescriptive easement does not take railroad property outright, and it is often possible for an easement that crosses over, under, or across a right-of-way, to co-exist with active rail operations without necessarily interfering with the latter. Because such easements do not affect the rail network in the same way as carving out property that is part of a railroad, and because a prescriptive easement may still allow the railroad to access the property, the Board has previously found that property disputes involving prescriptive easements are generally best addressed by state courts applying state law.

*Jie Ao & Xin Zhou*, 2012 WL 2047726, at *7; *accord 14500 Ltd.*, 2014 WL 2608812, at *5 (finding that an "exclusive easement" action was, for all intents and purposes, an adverse-possession claim that was preempted under an as-applied analysis and using the language of interference and the "effect" on rail transportation).

Further, the STB's decision in *City of Lincoln—Petition for Declaratory Order* is particularly instructive. No. FD 34425, 2004 WL 1802302 (STB Aug. 11, 2004). The issue there was whether the city's eminent-domain action over a 20-foot strip of rail right-of-way was preempted because it would leave insufficient room for "storage, loading, and unloading, as well as access to the track for maintenance and derailment response." *City of Lincoln v. Surface Transp. Bd.*, 414 F.3d 858, 861 (8th Cir. 2005). The STB clearly utilized an as-applied analysis, based on the specific facts of the case, in determining whether the state action was preempted:

> We conclude, based on the record, that Lincoln has not met that burden. Lincoln has not proffered convincing evidence that LLC can satisfy its present and future rail transportation needs using less than the full width of its right-of-way, or that the proposed trail can safely be placed so near LLC's active rail line. Because Lincoln has not made such a showing, we cannot declare, as Lincoln requests, that its proposed taking will not unduly interfere with interstate commerce.

*City of Lincoln*, 2004 WL 1802302, at *4. The Fifth Circuit agreed that the STB analyzed this attempted taking as applied. *Franks*, 593 F.3d at 412 ("The [8th Circuit's] *Lincoln* opinion . . . sustained the STB's application of an as-applied test . . . .").[4]

Norfolk relies heavily on *Skidmore v. Norfolk Southern Railway Company*, 1 F.4th 206 (4th Cir. 2021), for the proposition that Dille's easement claim is categorically preempted because it conflicts with potential future railroad use. There, the Fourth Circuit held that a state-law property claim was "completely" preempted. The court relied on the STB's decision in *Jie Ao & Xin Zhou* and noted that the STB has "unequivocally held that attempts to adversely

---

[4]In a related matter, the STB again refused to apply categorical preemption to a condemnation matter. *Lincoln Lumber Co.—Pet. for Declaratory Ord.—Condemnation of R.R. Right-of-Way for A Storm Sewer*, No. FD 34915, 2007 WL 2299735, at *2 (Aug. 10, 2007) ("[N]either the court cases, nor Board precedent, suggest a blanket rule that any condemnation action against railroad property is impermissible."). The takeaway here is that even eminent domain and condemnation actions are analyzed on a case-by-case basis. Courts and the STB certainly tend to disallow state actions that would completely deprive rail carriers of the use of a rail corridor, but they still look at those state actions through an as-applied lens.

possess a railroad's property constitute efforts to govern or manage rail transportation." *Id.* at 213.

But the *Skidmore* court did not expressly state whether it was conducting a categorical or as-applied analysis. The language it used, however, more than suggests that it was looking at the state-law claims of adverse possession and prescriptive easement through an as-applied lens:

> Skidmore spills much ink arguing that the Termination Act can't completely preempt her quiet title claims because the Act doesn't preempt (1) "all state law causes of action," or (2) all "state-law quiet title" claims. Those general statements may be true, but they miss the point. Norfolk Southern doesn't need to show that § 10501(b) displaces all state law claims brought against railways or all quiet title actions *in every context*. Rather, it must establish only that the Termination Act displaces Skidmore's particular claims because, in *this particular case*, they effectively regulate rail transportation when brought against railroads like Norfolk Southern.

*Id.* at 214 (emphasis added). In any event, *Skidmore* does not support the proposition that the ICCTA categorically preempts Dille's easement claim.

Norfolk broadly argues that Dille's proposed "non-exclusive" easement is, for all intents and purposes, entirely exclusive because it does not truly allow for shared use of the Parcel. Even assuming that is true, it is an argument for preemption under an as-applied analysis and has no bearing on whether prescriptive easements are the type of state actions that are categorically preempted. *See Franks*, 593 F.3d at 411 ("[Easement] laws are not meant to regulate railroad transportation, though at times they may have an incidental effect on railroad transportation."). Accordingly, we proceed with an as-applied analysis.

## C

The touchstone of the as-applied preemption analysis is "whether the state regulation imposes an unreasonable burden on railroading." *Adrian & Blissfield*, 550 F.3d at 541 (internal citation omitted). A state regulation is permissible if it (1) is not unreasonably burdensome and (2) does not discriminate against railroads. *Ibid.* (citing *Jackson*, 500 F.3d at 253). As to discrimination, the state action must address state concerns generally and not target the railroad industry. *Ibid.* Neither side argues that the granting of easements targets the railroad industry—

nor could they argue that a generally applicable property remedy targets rail operations. Accordingly, this matter does not involve nor require an analysis of discrimination.

So the issue here is whether Dille's prescriptive easement imposes an unreasonable burden on railroading. The STB has defined this standard as whether the particular state action has the effect of preventing or unreasonably interfering with rail transportation. *14500 Ltd. LLC*, 2014 WL 2608812, at *4. However you slice it, the question is one of reasonableness based on the specific facts of the case.

Reasonableness, then, is a question of the scope of the "taking." As to the easement holder's use of the property, both exclusivity and disparity of use are relevant factors. The more a property action excludes a rail carrier and takes a property for a conflicting use, the more likely the action will be preempted. On one end of the spectrum are prescriptive easements that are entirely exclusive. These are preempted because they truly "seek[] to deprive the railroad of its property" and are essentially the same as adverse-possession claims. *See id.* at *5 (finding that an "exclusive prescriptive easement" was preempted because the claimant sought to exclude the railroad from the property, a half-acre parcel adjacent to a rail line); *Skidmore*, 1 F.4th at 215 (holding that a landowner's quiet-title claim for a prescriptive easement was preempted because it was, for all intents and purposes, a claim for adverse possession).[5] On the other side are routine, non-conflicting uses of railroad property like non-exclusive easements for at-grade crossings and power lines. These types of easements are generally not preempted unless, for some reason, they impede rail operation or pose undue safety risks. *See Jie Ao & Xin Zhou*, 2012 WL 2047726, at *7 (finding that a prescriptive-easement claim for passage over railroad right-of way was not necessarily preempted because the easement could possibly "co-exist with active rail operations"); *Maumee & W. R.R. Corp. & RMW Ventures, LLC— Pet. for Declaratory Ord.*, No. FD 34354, 2004 WL 395835, at *2 (STB Mar. 2, 2004) ("[R]outine, non-conflicting

---

[5]*See also Union Pac. R.R. Co. v. Chicago Transit Auth.*, 647 F.3d 675, 680–81 (7th Cir. 2011) (holding that a state condemnation action seeking "perpetual easement" over railroad right-of-way [a 2.8-mile strip five feet adjacent to "heavy railroad traffic"] was preempted even though the state had a contractual agreement with the railroad and the use of the property in question would not change after the condemnation action—the CTA used the leased right-of-way to operate its own transit lines); *City of Lincoln*, 414 F.3d at 862 (holding that a city's proposed taking of railroad right-of-way to use as a bicycle and pedestrian trail [and for storm-sewer installation] was preempted); *Norfolk S. Ry. Co. & the Ala. Great S. R.R. Co.—Pet. for Declaratory Ord.*, No. FD 35196, 2010 WL 691256, at *1 (STB Feb. 26, 2010) (holding that a city's plan to condemn railroad corridor for park was preempted).

uses, such as non-exclusive easements for at-grade road crossings, wire crossings, sewer crossings, etc., are not preempted so long as they would not impede rail operations or pose undue safety risks.").[6]

Dille does not seek to control, remove, or otherwise interfere with any actual rail lines. But it does seek more than the preservation or establishment of crossings over rail property. Dille's easement no doubt "takes" rail corridor for uses other than rail operations—but the determinative inquiry is *to what degree*. And to answer that, we must decide how exclusive Dille's easement really is, to what extent Dille's use of the Parcel conflicts with Norfolk's, and whether shared use of the Parcel is even possible. And in the end, would Dille's easement amount to an unreasonable burden on rail transportation?

Dille says that it does not have—nor does it want—an "exclusive" easement over the Parcel. But the record and the relevant case law confirms that Dille's prospective easement would be so exclusive and conflicting that it would be essentially adverse possession by another name. The Parcel is, and must remain, fenced off to the exclusion of Norfolk. Dille's site manager cited two independent reasons for this—site security and Ohio law. But no matter how Dille arranges to allow Norfolk to access the Parcel or, hypothetically, store anything on it, Norfolk is quite literally excluded from the entire Parcel by a fence. Offering Norfolk a key to a gate or a contact number for emergency access doesn't change the fact that Dille seeks to possess Norfolk's rail corridor behind a locked fence. Moreover, Dille admits that at least two-thirds of the parcel cannot, under any circumstances, accommodate shared use with Norfolk. The lone fact that Dille could, in theory, allow Norfolk to store materials on a small part of the Parcel does not take this property remedy out of the realm of adverse possession. Despite Dille's best efforts, we see no credible argument that this prescriptive easement is anything but exclusive and incompatible with rail use.

---

[6]*See also Franks*, 593 F.3d at 415 (holding no preemption for four private railroad-crossing paths because the railroad could not prove that the crossings at issue affected railroad transportation); *Barrois*, 533 F.3d at 333 (holding no preemption of Louisiana law allowing for the establishment of easements in the form of private, at-grade rail crossings).

But the district court gave considerable weight to Dille's assertion that it sought a nonexclusive easement. There, it erred. By granting Dille its easement, the district court essentially ignored the practical distinctions that courts and the STB draw between different "takings" of property. The court allowed Dille's technically-accurate-but-essentially-meaningless declaration of non-exclusivity to rule the day. Although exclusivity is an important factor of the preemption analysis when courts and the STB consider property disputes, it is not the sole factor. The nature of the use itself, and whether it is "routine" and "non-conflicting," is just as important. *See Jie Ao & Xin Zhou*, 2012 WL 2047726, at *7.

In *14500 Ltd. LLC*, the STB assessed a similar situation. 2014 WL 2608812, at *5. There, a trucking company owned a property adjacent to CSX Transportation's rail yard. In dispute was a half-acre parcel that CSX owned, but which the trucking company had been occupying openly and continuously for the easement period under Ohio law. The trucking company claimed that its use of the parcel was essential to its operation and had fenced off the parcel, separating it from the rail yard. The trucking company petitioned for a declaratory order that it possessed the parcel by either adverse possession or exclusive prescriptive easement.

The STB, in accord with a federal district court, found that both claims were preempted. It found that the exclusive-prescriptive-easement claim was the same as the adverse-possession claim because the trucking company sought to exclude CSX from the property. *Ibid*. According to the STB, the difference between that case and cases where easements were not preempted was that there, the easement "could [not] possibly coexist with rail operations." *Ibid.*

Here, unlike in *14500 Ltd.*, Dille has said that it seeks a nonexclusive easement and has offered up some ways it believes the parties could achieve shared use of the Parcel or, in other words, coexistence. But the record indicates that coexistence is not really possible. The sort of coexistence that the term "easement" suggests is simply inapplicable to the reality of this situation. As the STB outlined in *Jie Ao & Xin Zhou*:

> [A] prescriptive easement does not take railroad property outright, and it is often possible for an easement that crosses over, under, or across a right-of-way, to co-exist with active rail operations without necessarily interfering with the latter. . . . [S]uch easements do not affect the rail network in the same way as carving out property that is part of a railroad . . . .

2012 WL 2047726, at *7.  And this makes sense for the type of easement desired in that case—passage over railroad property via a roadway.  But here, fencing off an entire parcel—the majority for exclusive use—is, for all intents and purposes, "carving out property that is part of a railroad."

The two aforementioned *City of Lincoln* cases are also instructive, even though they concerned attempted condemnations.  There, the city wanted to take a portion of rail corridor for a pedestrian trail.  In a related matter, it also wanted to condemn the property for a storm sewer.  The STB found that the pedestrian trail was preempted but the storm sewer was not.  The issue with the trail was whether "losing a 20-foot strip from the right of way along four blocks of the line would leave insufficient room for [the railroad's] storage, loading, and unloading, as well as access to the track for maintenance and derailment response." *City of Lincoln*, 414 F.3d at 861 (affirming the STB).  The issue with the storm sewer was whether its construction would interfere with rail operations even though the surface disruption would only be temporary. *See Lincoln Storm Sewer*, 2007 WL 2299735, at *2–3.

This distinction matters.  Surface use of rail corridor, even to the partial exclusion of the railroad, presents enough interference in rail operations to trigger preemption (the city was only proposing a *narrowing* of the right-of-way, *see City of Lincoln*, 2004 WL 1802302, at *4).  And a state action avoids preemption when the railroad could, in theory, reclaim use of its property. *See Franks*, 593 F.3d at 412 ("Why the Lincoln storm sewer project was less disruptive than the recreational trail was not explained.  Likely the surface use would only be during construction; the storm sewer would be underground; the railroad eventually would reclaim use of its entire surface right of way.").  Here, Dille's easement no doubt excludes Norfolk and Norfolk has no conceivable way to reclaim any real use of its own property.

Of course, Dille argues that its easement would be nonexclusive and that it is not taking the property at all.  But again, the STB (and the Fifth Circuit) acknowledged that nonexclusive easements are, generally, for things like "at-grade road crossings, wire crossings, sewer crossings, etc."—things that do not "take" rail property at all. *Ibid.* (quoting *Lincoln Storm Sewer*, 2007 WL 2299735, at *2).  These two cases involving two different state actions concerning the same piece of rail property demonstrate different ends of a spectrum.  And simply

put, Dille's proposed use of the Parcel is much closer to the pedestrian-trail-taking side of that spectrum.

Dille does not cite any case before the federal courts or the STB where part of an active rail corridor was used as exclusively and incongruously as Dille seeks here. Instead, it raises three main contrary arguments: (1) the easement is not exclusive; (2) the easement is not "draconian" enough to warrant preemption; and (3) Norfolk has never explained how limited access would unreasonably burden railroad operations.

As to exclusivity, calling something nonexclusive does not magically make it nonexclusive. Moreover, exclusivity is not the only consideration. As to whether the easement is "draconian," this argument relies on language from cases involving statutes that specifically attempted to regulate rail transportation. *See Adrian & Blissfield*, 550 F.3d at 541 ("Regarding the unreasonable-burden prong, the substance of the regulation must not be so draconian that it prevents the railroad from carrying out its business in a sensible fashion." (cleaned up)). Here, the issue is the granting of a prescriptive easement. Dille is correct that the ICCTA preemption analysis considers statutes and judicial remedies under the same "state action" umbrella, but that does not mean that the word "draconian" is the paramount standard here. Courts and the STB use different language (exclusivity, conflicting use) when discussing property remedies like easements.

Finally, Dille asserted—at various points in its briefing and at oral argument—that Norfolk has not identified any actual plans for using the Parcel, nor how Dille's past, present, or future use has, or would hypothetically, unreasonably burden rail operations. This argument misunderstands the relevant case law and, ultimately, the policy behind ICCTA preemption. The question is whether the state action (here, granting Dille an easement) has the effect of preventing or unreasonably interfering with rail transportation. Because "transportation" is defined broadly, *see* 49 U.S.C. § 10102(9)(A)–(B), the possession or conflicting use of railroad property can be burdensome even if the railroad is not currently using the contested property. *See Jie Ao & Xin Zhou*, 2012 WL 2047726, at \*6 ("Even if the property . . . is not currently being used as an active line of railroad . . . loss of a 35 by 135-foot strip . . . would unreasonably interfere with potential reactivation in the future and prevent entry onto the property for rail-

related maintenance . . . ."); *see also Union Pac.*, 647 F.3d at 681 ("Even if the property was not being used and Union Pacific had no immediate plans to use the property, a taking of this property would still prevent Union Pacific from using it for railroad transportation in the future.").**7**

Here, in holding that Norfolk's lack of use or immediate plans for use was a dispositive factor, the district court relied on an inapposite decision from the Middle District of Pennsylvania, *Zayo Grp., LLC v. Norfolk S. Ry. Co.*, No. 1:21-CV-600, 2022 WL 243897 (M.D. Pa. Jan. 25, 2022). In *Zayo*, the court determined that Norfolk had only presented evidence of "hypothetical future inconvenience" and thus failed to establish undue burden on rail operations. *Id.* at *3. But the issue there was an aerial easement for overhead fiberoptic cables, which were minimally burdensome under any potential railroad use. *Ibid.* ("The aerial easement sought by Zayo does not cross over the railroad tracks; it merely runs parallel to the track for less than a mile . . . . It does not require placement of new telephone poles or any other structural changes."). That case clearly concerned one of the "routine, nonexclusive" easements that generally avoid preemption. Here, it strains credulity to argue that Dille's easement presents as minimal a chance of interference with rail operations as an aerial easement.

## III. CONCLUSION

We hold that the ICCTA preempts Dille's prescriptive-easement claim. Accordingly, we REVERSE the decision of the district court and REMAND for further proceedings consistent with this opinion.

---

**7**These cases dealt with adverse possession and condemnation, respectively. But the same logic and policy applies to a prescriptive-easement claim that, for all intents and purposes, takes railroad property for exclusive and conflicting use.