# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

─────

Argued October 28, 2025                    Decided June 5, 2026

No. 25-1058

GRAFTON & UPTON RAILROAD COMPANY,
PETITIONER

v.

SURFACE TRANSPORTATION BOARD AND UNITED STATES OF
AMERICA,
RESPONDENTS

TOWN OF HOPEDALE, MASSACHUSETTS,
INTERVENOR

─────

On Petition for Review of an Order
of the Surface Transportation Board

─────

*David L. Meyer* was on the brief for petitioner.  With him on the briefs were *John M. Scheib* and *Emily S. Mordecai*.

*Sarah Yurasko* was on the brief for *amicus curiae* for petitioner American Short Line and Regional Railroad Association

*Erik G. Light*, Attorney, Surface Transportation Board, argued the cause for respondents.  With him on the brief were

2

*Robert B. Nicholson* and *Avi Grunfeld*, Attorneys, U.S. Department of Justice, *Anika S. Cooper*, General Counsel, Surface Transportation Board, and *Adam M. Kress,* Acting Deputy General Counsel.

*Sean Grammel* argued the cause for intervenor. With him on the brief were *David S. Mackey*, *W. Eric Pilsk*, and *Charles A. Spitulnik*.

Before: PILLARD and WALKER, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed PER CURIAM.

PER CURIAM: Grafton & Upton Railroad thinks it purchased a parcel of land in Hopedale, Massachusetts. It wants to build a railroad on that land.

Hopedale thinks Grafton does not own the land. It points to a state law giving the town a right of first refusal when certain land is sold.

Hopedale sued Grafton in Massachusetts state court. But while that suit was pending, Grafton petitioned before the Surface Transportation Board. It asked the Board to declare that the Interstate Commerce Commission Termination Act preempts the state law.

The Board denied Grafton's petition — as do we.

**I**

**A**

Grafton & Upton Railroad Company owns and operates a 16.5-mile rail line in Massachusetts. The line runs from

Milford through Hopedale to North Grafton, where it connects to the national freight network. To support recent growth by constructing a new transloading facility along that line, Grafton sought to acquire and develop a 155-acre parcel in Hopedale owned by the One Hundred Forty Realty Trust.

Years earlier, the Trust had voluntarily applied for and obtained certification of roughly 130 acres of the land as forest land under Massachusetts General Law Chapter 61. That statute allows landowners to obtain a reduced tax rate on qualifying forest land. *See* Mass. Gen. Laws ch. 61, § 2. In exchange, the owner must notify the municipality before selling the land for, or converting it to, "residential, industrial or commercial use." *Id.* § 8.

In that scenario, the municipality holds a right of first refusal to match a bona fide offer, or — if the owner plans to convert the land without a sale — an option to purchase at fair market value. *Id.* No sale or conversion of the certified forest land is valid until the municipality's option period has expired. *Id.* A landowner may elect to remove its parcel's Chapter 61 designation by paying roll-back taxes, *id.* § 3, but Grafton does not contend that occurred.

In June 2020, Grafton and the Trust agreed that Grafton would buy the parcel for $1.175 million. To comply with Chapter 61, the Trust sent Hopedale a notice of intent to sell after it reached the initial sale agreement with Grafton. But the notice didn't distinguish the price of the contiguous non-forest portion of the parcel from the purchase price for the classified forest land (which price, if bona fide, Hopedale would have to match to exercise its Chapter 61 rights). So Hopedale responded that the Trust's notice was deficient under Chapter 61 and advised the Trust that it reserved all rights and remedies available to it regarding its right of first refusal.

Rather than correct the deficiency, the Trust withdrew the notice and stated that any future sale or conversion would be "subject to a new Notice of Intent." Hopedale told the Trust it believed the withdrawal was ineffective and that the town retained its right of first refusal. Neither the Trust nor Grafton sent any new notice of intent to sell or convert after that initial notice.

Instead, in October 2020, Grafton and the Trust structured a transaction that was different in form but had nearly the same effect. Grafton paid $1.175 million to purchase a small, unforested portion of the parcel and to acquire 100% of the Trust's beneficial interest. As a result, Grafton claimed to have obtained control of the entire property.

On October 15, 2020, Grafton notified Hopedale that it had acquired full beneficial ownership of the Trust. Six days later, Hopedale again asserted its Chapter 61 rights in a letter to Grafton. It explained that under Massachusetts law, the transfer of beneficial interest constituted a transfer of title that gave the Town an independent opportunity to exercise its right of first refusal.

At a Special Town Meeting later that week, residents voted in favor of the Town purchasing the land. In the meantime, Grafton had begun clearing the property of trees, which Hopedale contends gave rise to yet another opportunity to exercise its right of first refusal. The Town then sued in Massachusetts Land Court to stop Grafton from clearing trees and to enforce its Chapter 61 purchase rights, and Grafton petitioned the Board for a declaration that the Interstate Commerce Commission Termination Act (ICCTA[1]) preempts Chapter 61.

---

[1] For anyone curious, ICCTA can be pronounced ICK-tuh.

The dispute has since taken several (more) turns. Hopedale's Select Board and Grafton reached a settlement agreement under which Hopedale would purchase part of the land and waive its right of first refusal. The parties then filed for dismissal of their respective suits at the Land Court and the Board. But several town taxpayers sued, claiming — among other things — that the Select Board lacked authority to settle without town approval. *See Reilly v. Town of Hopedale*, No. 2185-cv-238, 2021 WL 6297927, at *3–5 (Mass. Super. Nov. 4, 2021), *judgment entered*, 2021 WL 6973730 (Mass. Super. 2021), and *opinion clarified*, 2022 WL 20842182 (Mass. Super. 2022), and *aff'd*, 102 Mass. App. Ct. 367, 206 N.E.3d 572 (2023).

The Massachusetts Superior Court agreed with the taxpayers and enjoined execution of the settlement agreement. *Id.* at *3–6. Then, after further proceedings, the Land Court vacated the stipulation of dismissal.

After all of that, according to the parties, Hopedale's suit to enforce its Chapter 61 purchase right is now in discovery in state court.

**B**

With the revival of Hopedale's state-court suit to enforce its Chapter 61 right to prevent Grafton's acquisition, Grafton again petitioned the Surface Transportation Board for a declaratory order that ICCTA preempts Hopedale's exercise of Chapter 61.

ICCTA grants the Board exclusive jurisdiction over:

(1) transportation by rail carriers . . . and

(2) the construction, acquisition, operation, abandonment, or discontinuance of . . . [rail] facilities.

49 U.S.C. § 10501(b).  ICCTA provides that its remedies "with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." *Id.*

The Board denied the petition.  It noted that Grafton's renewed petition appeared to have abandoned any argument for facial or categorical ICCTA preemption of Chapter 61, and in any event observed that Chapter 61's right-of-first-refusal provisions "do not intrude on matters that are directly regulated by the Board." *See Grafton & Upton Railroad Co.—Petition for Declaratory Order*, FD 36464, slip op. at 7 (STB served Dec. 18, 2024).  The Board acknowledged that "[i]t is difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operations" (quoting *City of Auburn v. United States*, 154 F.3d 1025, 1030 (9th Cir. 1998)), but held that ICCTA does not oust Chapter 61.  Instead, it recognized Chapter 61 as a generally applicable state property-acquisition rule not "subject to categorical preemption" just because a would-be buyer might have plans to build railroad facilities on land the potential seller had had certified as forest land.  *Id.* at 7.

The Board then turned to Grafton's as-applied preemption arguments.  Grafton asserted that, given "the unique factual circumstances" here, Hopedale's right of first refusal poses an unreasonable burden on or interference with Grafton's railway land use.  According to Grafton, its tree-clearing and other site work amounted to rail activities on the site supporting ICCTA preemption of a Chapter 61 claim that could interfere with those activities.  *Id.* at 9.

The Board held that Hopedale's assertion of its Chapter 61 rights in this situation "would not unreasonably burden or interfere with rail transportation." *Id.* at 8–9. Consistent with its prior decisions, the Board explained that state law determines property ownership and that a municipality may "eject a railroad . . . if the court determines that the railroad does not have a state law property interest in the land." *Id.* at 9 (citing *City of Milwaukie—Petition for Declaratory Order*, FD 35625, slip op. at 4 (STB served Mar. 25, 2013)).

Grafton now petitions for review.

## II

We review the Board's order under the Administrative Procedure Act. *See Eagle County v. Surface Transportation Board*, 82 F.4th 1152, 1174 (D.C. Cir. 2023), *rev'd and remanded on other grounds sub nom. Seven County Infrastructure Coalition v. Eagle County*, 145 S. Ct. 1497 (2025). Under that framework, we will set aside the Board's action if it is arbitrary or capricious, contrary to law, in excess of statutory authority, or unsupported by substantial evidence. *See* 5 U.S.C. § 706(2)(A)–(C), (E). We assess questions of statutory interpretation — including whether ICCTA preempts state law — using the court's independent judgment and consider the Board's reasoning only to the extent it is persuasive. *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2262 (2024).

Grafton challenges the Board's decision on two grounds. First, it contends that Chapter 61 is preempted by ICCTA because Chapter 61 cannot be "used to force the sale of property under development by a railroad for rail transportation." Pet'r's Br. at 25–26. Second, it argues that the Board erred (a) by failing to consider whether Hopedale's invocation of Chapter 61, as applied, would unreasonably

burden Grafton's "ability to provide rail transportation services to its current and potential future customers," *id.* at 43, and (b) by concluding that Grafton had not relied on the settlement agreement when it developed the property. *Id.* at 49.

As a general matter, ICCTA preempts state law that would control or frustrate a railroad's use of its own land for rail transportation. *See* 49 U.S.C § 10501(b). But ICCTA does not displace generally applicable property law governing land a railroad does *not* own. And whether Grafton has a valid property interest in the land remains a contested issue in the Massachusetts litigation. So Grafton's arguments fall short.

**A**

The Board correctly held that ICCTA does not preempt Chapter 61's right-of-first-refusal provisions.

ICCTA preempts state laws that "have the effect of managing or governing rail transportation," but not those "having a more remote or incidental effect on rail transportation." *Delaware v. Surface Transportation Board*, 859 F.3d 16, 18 (D.C. Cir. 2017) (quoting *New York Susquehanna & Western Railway Corp. v. Jackson*, 500 F.3d 238, 252 (3d Cir. 2007)). The Board has treated laws as preempted when they intrude into its regulated areas — "rates, services, construction, or abandonment" — or when they functionally block a railroad from constructing or maintaining facilities or conducting operations, including through permitting or preclearance regimes. *CSX Transportation, Inc.—Petition for Declaratory Order*, FD 35832, slip op. at 4 (STB served July 31, 2015).

The principle is straightforward: "The interstate rail network could not function properly if states and localities could impose their own potentially differing standards for

railroad activities that are an integral part of, and directly affect, rail transportation." *Id.* But the Board has not applied this rationale to property-acquisition laws. It has instead recognized that state and local exercises of traditional police powers fall outside § 10501(b) so long as "they do not unreasonably interfere with railroad operations or the Board's regulatory programs." *Id.*

Chapter 61 fits none of the categories that trigger preemption. It does not intrude into any field the Board regulates — rates, services, construction, or abandonment. It is not a permitting or preclearance regime that requires the railroad to obtain state approval before developing land it owns. It creates no "differing standard[]" for railroad activities in Massachusetts. *Id.*

Instead, Chapter 61 establishes a mechanism for the state to buy property from an owner who accepted a tax benefit in exchange for granting that right. It is a generally applicable property-acquisition law. Though it may have the "incidental effect" of preventing a railroad from acquiring land it seeks to develop — just as many other right-to-purchase contracts would — it does not "have the effect of managing or governing rail transportation." *See Delaware*, 859 F.3d at 18 (quoting *New York Susquehanna & Western Railway Corp.*, 500 F.3d at 252).

Consider this hypothetical. Milburn Pennybags owns land that the Reading Railroad would like to purchase. But he won't sell. So the railroad sends him a check for the fair market value of the land, asserts ownership, and prepares to build. Pennybags then files a quiet title action in state court.

Does ICCTA preempt the state law that gives title of the land to Pennybags and prevents the Railroad from building on it? No, because ICCTA does not preempt generally applicable

state property laws that "do not unreasonably interfere with railroad operations or the Board's regulatory programs." *CSX Transportation, Inc.—Petition for Declaratory Order*, slip op. at 4. Indeed, not even Grafton argues that ICCTA preempts every state law that prevents a railroad from acquiring land it wants.

Here, Chapter 61 is a generally applicable property law that may prevent Grafton from acquiring a valid interest in the land it wants. Until that issue is resolved, the land is not railroad property within the Board's exclusive jurisdiction.

This is consistent with Board precedent. In *City of Milwaukie*, even though the railroad claimed a property interest in land it used to store railroad material, the Board deemed it "appropriate for a state or municipal court to resolve the parties' property law dispute." *City of Milwaukie—Petition for Declaratory Order*, FD 35625, slip op. at 3 (STB served Mar. 25, 2013). And in *Eastside Community Rail*, the Board explained that "disputes concerning state contract and property law should be decided by the appropriate courts with expertise in those matters, rather than by the Board." *Eastside Community Rail, LLC—Acquisition and Operation Exemption—GNP RLY Inc.*, FD 35730, slip op. at 3 (STB served Mar. 8, 2022).

Grafton points to various Board orders and federal cases for the proposition that the Board's "broad and exclusive jurisdiction over railroad transportation prevents the application of state laws . . . if those laws would have the effect of foreclosing, or unduly restricting, present or future transportation by rail carrier." *See* Pet'r's Br. at 15 (citing *Grafton & Upton Railroad Co.—Petition for Declaratory Order*, FD 36696, slip op. at 7 (STB served Nov. 15, 2023) (collecting cases)). But in each cited decision, the railroad

already held a recognized property interest. None addresses whether ICCTA preemption attaches before the railroad establishes such an interest. Grafton identifies no authority that extends preemption that far.

**B**

Grafton contends the Board's preemption analysis also fell short by failing to consider certain fact-specific ways in which its activities on the disputed parcel are burdened by Hopedale's Chapter 61 claim. *Id.* at 43–52; *see Franks Investment Co. v. Union Pacific Railroad Co.*, 593 F.3d 404, 414 (5th Cir. 2010) (laying out analytical framework for as-applied preemption under ICCTA); *Norfolk Southern Railway Co.—Petition for Declaratory Order*, FD 35701, slip op. at 3 (STB served Nov. 4, 2013) (same). We disagree.

Grafton's burden argument focuses on two premises. First, it argues that the Board should have considered whether the Town's exercise of its right of first refusal would burden the railroad's ability to find suitable property for business expansion. *Id.* at 45–49. Second, Grafton asserts that the Board should have considered the railroad's reliance interest when it developed the property after the Settlement Agreement. *Id.* at 49–52.

These arguments again presuppose an answer to the issue in dispute in state court: whether Grafton has *ever* held valid title to the parcel.

For starters, Grafton failed to make its suitable-property argument before the Board, so it is forfeited. In any event, it is meritless. Grafton invokes Board precedent that the application of a statute or regulation may be preempted if it would result in unreasonable interference with railroad operations. *Id.* at 43 (citing *Mid-America Locomotive and Car*

*Repair, Inc.—Petition for Declaratory Order*, FD 34599, slip op. at 5 (STB served June 6, 2005)). But Grafton points to no authority that assesses potential interference with railroad operations *before* the railroad has established a legal interest in the property.

The Board precedent cited by Grafton concerns property that was undisputedly "railroad-owned." *Mid-America Locomotive and Care Repair, Inc.*, slip op. at 5. If Hopedale were attempting a "seizure by adverse possession" of established railroad property,[2] or if it were interfering with an "established railroad right[]-of-way," the analysis could well differ. *See* Pet'r's Br. at 42 (quoting *Skidmore v. Norfolk Southern Railway Co.*, 1 F.4th 206, 217 (4th Cir. 2021)). But Grafton's cited precedent is inapplicable where the railroad has not established a property interest.

As for Grafton's reliance theory, the Board reasonably concluded that Grafton had not shown that it relied on the settlement agreement in developing the property or that any such reliance was reasonable under the circumstances. It found that Grafton had already begun clearing trees months before it entered the settlement agreement — at a time when any reliance could not have been reasonable. And the Board noted that Grafton presented no evidence that any grading, clearing, or acquisition work occurred while the settlement agreement was in place.

Indeed, Grafton failed even to "specify the timing of the engineering and development costs it purportedly incurred in reliance on the settlement agreement," *Grafton & Upton Railroad Co.—Petition for Declaratory Order*, FD 36464, slip op. at 8, facts relevant to reasonableness given that the settlement agreement was in effect for less than a month before

---

[2] *See* Petitioner's Br. at 34 (attempting this framing).

the successful court challenge was filed. No party appealed the state court's decision invalidating the agreement and Grafton presented no argument to the Board that it was wrongly decided. *See id.* Taken together, that evidence supports the Board's finding that Grafton did not perform site work in reasonable reliance on a claim of ownership of the site.

More fundamentally, Grafton's theory presumes that it was developing property it undisputedly controlled. *See id.* at 39–40 (describing its rail development activities as "carried out on property then controlled by Grafton (and still owned by 140 Trust), as to which Hopedale had at most a pending claim asserting the right to take over that property"). But if the state courts decide Grafton never validly acquired title, the situation is different: Grafton was developing property it never legally controlled under an unauthorized and unexecuted agreement. Until the state court decides the property dispute, we cannot properly assess Grafton's reliance theory.

\* \* \*

Grafton strains to reframe this case as if it already owns and controls the parcel. But Chapter 61 is a generally applicable state law under which a municipality may enforce its right of first refusal before covered forest land can be conveyed to a railroad (or any other potential owner). As such, it is not categorically preempted by ICCTA. And here, Grafton lacks any claim that Hopedale's exercise of Chapter 61 somehow unreasonably burdens rail transportation on the facts as the Board found them.

For these reasons, we deny Grafton's petition for review of the Board's order.

*So ordered.*